Butler Township                      :
                                     :
          v.                     :
                                     :
George G. Aubrey and John M. Aubrey  :
                                     :
          v.                     :
                                     :
Robert C. Ward, Deborah A. Ward,   :
Jeffrey P. Miller and Megan M. Groh  :
Miller                             :
                                     :
Appeal of: George G. Aubrey and    :   No. 405 C.D. 2022
John M. Aubrey                  :   Submitted: March 3, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: June 21, 2023

       George G. Aubrey and John M. Aubrey (Aubreys) appeal from a judgment entered in favor of Butler Township (Township) by the Court of Common Pleas of Butler County (trial court) for the cost of replacing a storm water pipe and the Township's attorney and engineering fees associated with the litigation. The trial court's verdict also dismissed the additional defendants, Robert C. Ward and Deborah A. Ward (Wards) and Jeffrey P. Miller and Megan M. Groh Miller (Millers)

from the action. Upon review, we affirm in part, reverse in part, and vacate and remand in part.

## I. Background

In 1988 and 1989, the Aubreys were in the process of planning a residential development surrounding a golf course in the Township. The development plan contemplated the placement and maintenance of a storm water management system that included a retention pond and associated pipes and culverts on neighboring property owned by the Wards. During the development planning and approval process, several written agreements were drafted that are pertinent to the dispute in this case.

On February 24, 1988, the Aubreys and the Wards signed a Contract of Agreement and Related Covenants concerning road construction and the retention pond (First Aubrey-Ward Agreement). Reproduced Record (RR) at 41a-47a. In relevant part,[1] the First Aubrey-Ward Agreement required the Wards to "retain and maintain a 'water retention pond' as constructed by [the] Aubrey[s] on [the] Ward[s'] property pursuant to Butler Township specifications." *Id.* at 43a.

On April 1, 1988, the Aubreys and the Wards signed a second and supplemental Contract of Agreement (Second Aubrey-Ward Agreement). RR at 21a-22a. The Second Aubrey-Ward Agreement referred to the First Aubrey-Ward Agreement and added a provision in which the Aubreys "agree[d] to repair any and all 'pipes,' except those damaged by [the] Ward[s] for[] a period of thirty (30) years . . . ." *Id.* at 21a.

---

[1] In addition, the Wards agreed to dedicate a strip of land at the northern edge of their property for part of a planned road. RR at 41a-42a. The Wards, who were considering developing their own property, also agreed to pay the Aubreys $6,000 for frontage and for engineering and legal fees and to pay the Aubreys $38,000 toward the road construction costs in the event Wards developed their own property in the future. *Id.* at 43a.

2

On May 5, 1988, the Wards signed a proposed Agreement with the Township, which the Township never executed (Unexecuted Ward-Township Agreement). RR at 38a-39a. Under the Unexecuted Ward-Township Agreement, the Wards would have been "perpetually liable for the maintenance and upkeep of the storm water retention pond including any culvert, swales, drainage pipes, spillways, discharge channels, and/or other parts of the storm water retention pond." *Id.* at 38a. The Unexecuted Ward-Township Agreement would also have required the Wards to note their perpetual maintenance obligation on the development plan and record the agreement at their own expense. *Id.* at 38a-39a. However, the Township and the Wards maintain that the Township never accepted the Unexecuted Ward-Township Agreement. *Id.* at 62a & 186a. That agreement was never recorded. *Id.* at 63a & 187a. The Aubreys, who were not parties to the Unexecuted Ward-Township Agreement, are the only parties who assert that it was ever finalized.

On May 15, 1988, the Aubreys and the Township signed an Indemnification Agreement. RR at 9a-10a. In the Indemnification Agreement, the Aubreys, as the Developer, agreed to indemnify the Township and hold it harmless "against all liability, claims, judgments, actions, causes of actions, suits or demands for damages attributable to or arising in whole or part, from the . . . water retention devices . . . ." *Id.* at 10a.

Finally, on April 27, 1989, the Aubreys and the Township signed an Agreement relating to the development plan's storm water management system (Storm Water Management Agreement). RR at 12a-15a. In the Storm Water Management Agreement, the Aubreys, again as the Developer, agreed to be "perpetually responsible for the maintenance of the storm water control devices in accordance with the approval plan and township ordinances [and] for the

3

maintenance and upkeep of the storm water management plan including any retention devices, culverts, swales, drainage pipes, spillways, discharge channels, and/or other parts of the plan . . . ." *Id.* at 15a.

In 2012, the Wards sold their property to the Millers. RR at 52a-55a. The deed recited that the conveyance was subject to the First and Second Aubrey-Ward Agreements. RR at 53a.

In August 2017, within the 30-year period covered by the Second Aubrey-Ward Agreement, the Township obtained a written opinion from an engineer stating that the pipe emptying into the retention pond had deteriorated and needed repair. RR at 18a. The letter noted that the Storm Water Management Agreement made the Aubreys responsible for the repairs. *Id.* Later that month, the Township sent the Aubreys a certified letter enclosing the engineer's written opinion and demanding that the Aubreys repair or replace the pipe. *Id.* at 17a; *see also* RR at 595a.

The Aubreys denied responsibility for repair or replacement. They blamed the Township and the Wards for the pipe's deterioration, asserting that the Township's alleged dumping of "excessive chlorides/salt [(on the roads, evidently referring to winter road treatment)] played a major role for damage to the storm water management system along with the construction by Ward/Miller that exposed a section of pipe to air and sun." RR at 629a. The Aubreys theorized that "[t]he excessive salt applied by [the Township] for decades and the exposure of the pipe to sun and air aged the pipe prematurely through oxidation. However, the integrity of the sides and top of the pipe are sound." *Id.*

Following the Aubreys' continued refusal to repair or replace the pipe, the Township filed a civil complaint, including a claim seeking declaratory relief

4

(Count I) and a breach of contract claim to enforce the Storm Water Management Agreement (Count II). RR at 2a-7a. During the pendency of the action, the Township obtained an updated engineering opinion based on a re-examination of the pipe using a closed-circuit television camera (CCTV). In a March 2021 letter to the Township, the engineer opined:

> A review of the CCTV revealed that the pipe invert (bottom of pipe) has deteriorated. The invert has rusted away along large sections of the pipe which has in turn caused the pipe bedding (stone) to be washed away. This deterioration has reduced the structural strength of the pipe, which has led to the development of a sink hole on the property, and will likely lead to additional sink holes and a total collapse of the pipe.

RR at 966a.

The Aubreys joined the Wards and the Millers as additional defendants. Following discovery, the trial court issued an order granting summary judgment in favor of the Township except as to Count II of the complaint, the breach of contract claim against the Aubreys based on the Storm Water Management Agreement. *See* RR at 944a-46a. The trial court's order also granted summary judgment in favor of the Wards and the Millers. *Id.* The Aubreys filed an improper interlocutory appeal from the trial court's order but later withdrew the appeal, stipulating that the order was not appealable.[2] *See id.* at 973a, 977a & 979a-81a.

The remainder of the case proceeded to a non-jury trial in November 2021. The trial court's subsequent verdict provided, in pertinent part:

---

[2] The Superior Court also issued an order dismissing the appeal because the Aubreys failed to file a brief. RR at 955a.

AND NOW, this 15th day of December, 2021, after trial without a jury on [Nov]ember 29th, 2021, the trial judge finds as follows.

1. Verdict is for the Plaintiff BUTLER TOWNSHIP and against the Defendants GEORGE G. AUBREY and JOHN M. AUBREY in the sum of $64,350.00.

2. Additional Defendants ROBERT C. WARD and DEBORAH A. WARD did not cause or in any way contribute to the deterioration of the Pipe, and are dismissed from the case.

3. Additional Defendants JEFFREY P. MILLER, and MEGAN M. GROH MILLER did not cause or in any way contribute to the deterioration of the Pipe, and are dismissed from the case.

RR at 1098a-99a. On December 20, 2021, the trial court issued findings and conclusions in support of its verdict. *Id.* at 1093a-97a. The trial court determined that the Township satisfied its burden of proof, that the pipe required replacement, and that the Township was entitled to recover the replacement cost of $64,350.00 from the Aubreys. *Id.* at 1097a. The trial court also reiterated that neither the Wards nor the Millers "caused or in any way contributed to the deterioration of the Pipe." *Id.*

In addition, the trial court accepted post-trial briefs from the Township and the Aubreys regarding the Township's request for an award of attorney fees. *See* RR at 1075a-91a. In a separate memorandum opinion, the trial court ordered the Aubreys to pay attorney fees of $31,492.50 to the Township. RR at 1102a-1112a. The trial court held that the Storm Water Management Agreement required the Aubreys to pay the Township's attorney and engineering fees. *Id.* at 1102a. In the trial court's opinion, "the contractual obligation was clear as it relates to the Aubreys and Butler Township, and litigation was only made necessary by the

6

Aubreys refusal to perform under that obligation." *Id.* at 1109a. The trial court also found the fee amount was "fair and reasonable." *Id.* at 1102a & 1109a.

However, the trial court did not base its fee award solely on its finding of a contractual obligation. The trial court also concluded that "the conduct of the Aubreys has been exceedingly dilatory, obdurate, and vexatious." RR at 1111a. In a detailed analysis, the trial court explained that

> the Aubreys could have prevented many of these fees by not filing numerous motions, which in[] turn required preparation by opposing counsel, only to later withdraw them shortly before trial, or if they were not withdrawn, many allegation[s] within were entirely devoid of factual support at the hearing. First, while acting pro[] se, the Aubreys filed a Motion to Dismiss for Spoliation of Evidence without any factual support, then withdrew the Motion at the time scheduled for argument on the Motion. Next, the Aubreys filed an Appeal only to later stipulate that it was improperly filed and withdr[a]w it, which delayed the case seven (7) months. Finally, the Aubreys filed a Motion to Vacate Summary Judgment, in which they allege[d] fraud, then withdrew the allegation a week before the hearing. In the same Motion, the Aubreys alleged that [the Wards'] actions damaged the Pipe[;] however, they failed to provide a quantum of support at trial for this allegation. In fact, experts for both [the Township] and [the Aubreys] testified that [the Wards] did not cause or in any way contribute to the deterioration of the Pipe. Therefore, the Court finds the full [attorney fee] amount requested by the [Township] fair and reasonable.

*Id.* at 1109a-10a. The trial court found further that the Aubreys' "repeated pattern of filing motions in which they allege arguments, only to later withdraw or have no factual support for them, was intended to frustrate the legal process and intended to annoy the Township." *Id.* at 1111a.

Thus, the trial court based its decision to award attorney fees on both the Aubreys' contractual obligation and their dilatory, obdurate, and vexatious

7

conduct during the litigation. However, because the trial court concluded the Aubreys were contractually obligated to pay the Township's attorney fees in any event, it posited that it did not need to determine specifically what portion of those attorney fees were attributable to the Aubreys' dilatory, obdurate, and vexatious conduct. RR at 1111a.

Finally, regarding the Township's engineering fees, the trial court observed that the Storm Water Management Agreement obligated the Aubreys to "pay all costs reasonably incurred by [the T]ownship for engineering and legal fees for the review of the plan, inspection of the plan, approval of the plan and improvements . . . ." RR at 15a. The trial court concluded that this provision required the Aubreys to pay the Township's engineering fees of $4,500.00 relating to the engineer's investigation and opinion concerning the deterioration of the pipe more than two decades after the development plan's approval. *Id.* at 1110a.

The Aubreys filed a motion for post-trial relief, which the trial court denied in a memorandum opinion and order dated March 24, 2022. RR at 1117a-98a. This appeal by the Aubreys followed.[3]

---

[3] Our review of a trial court's order granting summary judgment is *de novo*, and our scope of review is plenary; this Court applies the same standard for summary judgment as the trial court. *Lancaster Cnty. Agric. Pres. Bd. v. Fryberger*, 257 A.3d 192, 199 n.13 (Pa. Cmwlth. 2021). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Our review of a non-jury trial verdict is limited to determining whether the findings of the trial court are supported by substantial evidence and whether the trial court committed an error in applying the law. *Pottstown Sch. Dist. v. Montgomery Cnty. Bd.*, 289 A.3d 1142, 1145 n.3 (Pa. Cmwlth. 2023). The trial judge's findings of fact have the same weight and effect on appeal as the verdict of a jury: we consider the evidence in the light most favorable to the verdict winner and reverse the trial court only if its findings of fact are not supported by substantial evidence in the record or are premised on an error of law. *Id.* Thus, our scope of review of a question of law is plenary. *Id.*

8

## II. Issues on Appeal

The Aubreys raise a number of issues on appeal, which we combine and reorder for convenience and clarity as follows.[4]

First, the Aubreys assert various errors in the trial court's decision to grant partial summary judgment against them. They insist the Storm Water Management Agreement was actually entered in April 1988, not April 1989, and that the date on the agreement was improperly changed later. According to the Aubreys, this perceived date discrepancy is significant because it means that the Unexecuted Ward-Township Agreement was entered later and, therefore, supplanted their repair obligations under the Storm Water Maintenance Agreement. Thus, the Aubreys maintain that the trial court erred by concluding that their pipe repair obligations under the Storm Water Management Agreement were not abrogated by the Second Aubrey-Ward Agreement or the Unexecuted Ward-Township Agreement. In a related argument, the Aubreys claim that the trial court erred in determining that the First and Second Aubrey-Ward Agreements limited the Wards' maintenance and repair obligations to the retention pond and did not include the pipe at issue. The Aubreys also insist that the trial court erred in determining that the Unexecuted Ward-Township Agreement was unenforceable. The Aubreys assert that contemporaneous Township meeting minutes from May 1988 establish the Township's acceptance of the agreement even though it was never signed or recorded. Finally, regarding the cause of the pipe's deterioration, the Aubreys contend the trial court should not have determined in its summary judgment decision

---

[4] We note that our reorganization of the issues was necessitated in part by the fact that the Aubreys' arguments are not organized in correlation with the statement of questions presented. *See* Pa.R.A.P. 2119(a) (directing that "[t]he argument shall be divided into as many parts as there are questions to be argued . . .").

9

that the Wards could not have damaged the pipe and that expert testimony was required to prove any such alleged damage by them. Similarly, the Aubreys posit that the trial court erred again after the trial, when it found as a fact that neither the Wards nor the Millers caused or contributed to the deterioration of the pipe.

The Aubreys also argue that they did not have prior notice that the trial would encompass the question of causation of the pipe's deterioration. They likewise contend they had no advance notice that the trial evidence would encompass the cost of replacing the pipe. In a related argument, they assert that the trial court erred by allowing the Township's expert witness to testify about replacement cost.

Finally, the Aubreys allege error in the trial court's award of engineering and attorney fees against them. The Aubreys maintain that the Storm Water Management Plan, on which the trial court relied, does not authorize the imposition of such fees. Further, the Aubreys assert that the trial court did not have sufficient evidence before it to support its finding that the fees were reasonable.

### III. Discussion
### A. Summary Judgment

The Aubreys' primary argument is that the trial court should not have entered summary judgment for various reasons. We address each in turn.

### 1. The Date of the Storm Water Management Agreement

The Aubreys allege that the Storm Water Management Agreement was entered on April 27, 1988, not April 27, 1989. They point out that the "9" in "1989" in the first paragraph of the agreement is in different type from the rest of the date, and they suggest it was fraudulently altered. In a motion to vacate the trial court's

summary judgment order, the Aubreys conceded that they did not timely or properly assert fraud as an affirmative defense in their pleadings, but they blamed their failure to plead the defense on their attorney's health issues. RR at 974a. However, they later withdrew that motion. Accordingly, the assertion of fraud was waived.

Moreover, review of the Storm Water Management Agreement shows that it was a form agreement with blanks for the day and month, and with the year stated as "198 " leaving the specific year blank. *See* RR at 12a. *All* of the parts of the date – the day, the month, and the final digit of the year – were added in italic type slightly smaller than the type font of the form, as were the Aubreys' names as "Developers." *Id.* There is nothing in that fact which suggests the year was altered. In addition, the notarization at the end of the agreement also bore the date of April 27, 1989 as the date of the Aubreys' signatures, again with their names and the date typed in slightly smaller italic font on a preprinted form. *Id.* at 16a. Thus, the Aubreys adduced no evidence whatsoever of any alteration of the date on the agreement. Their bare averment was insufficient to raise a genuine issue of material fact.

The Aubreys contend that the date of the Storm Water Management Agreement is "critical to the determination of liability for the maintenance of the pipe," because if the Unexecuted Ward-Township Agreement was executed later, it would have "superseded, or at a minimum, modified" the Aubreys' obligations under the Storm Water Management Agreement. Aubreys' Br. at 15. We disagree and conclude that the date of the Storm Water Management Agreement is ultimately unimportant for two reasons. First, as discussed further below, the Unexecuted Ward-Township Agreement was never finalized. Second, the enforceability of the Storm Water Management Agreement does not depend on the date on which it was

11

executed. We agree with the trial court that the existence or nonexistence of an enforceable agreement between the Township and the Wards has no bearing on the Aubreys' obligations under the Storm Water Management Agreement. There was nothing in the terms of the Unexecuted Ward-Township Agreement that stated any intent to abrogate the Aubreys' responsibilities as Developer under the Storm Water Management Agreement. Thus, the trial court correctly concluded that the Aubreys' obligations to the Township under the Storm Water Management Agreement were not affected by any alleged separate agreement between the Wards and the Township to which the Aubreys were not parties. Therefore, whether the date of the Storm Water Management Agreement was 1988 or 1989 was immaterial.

For these reasons, we reject the Aubreys' challenge to the date of the Storm Water Management Agreement.

**2. Enforceability of the Unexecuted Ward-Township Agreement**

The Aubreys claim there was evidence of the Township's acceptance of the Unexecuted Ward-Township Agreement in contemporary meeting minutes. However, our review of the record indicates that such acceptance by the Township is not a fair or reasonable inference from the cited minutes.

The Township Planning Commission's meeting minutes of March 1, 1988 indicated that an unspecified Ward dedication document was reviewed. RR at 813a. The minutes did not make clear what document was referenced. More importantly, there was no indication in the minutes that the Township was agreeing to the document; to the contrary, the minutes stated that the Township's solicitor needed to check some of the document's language. *Id.*

12

The Planning Commission's meeting minutes of April 5, 1988 stated, in pertinent part: "Require copy of standard Improvements-Maintenance-Amenities Agreement to Wards for signature. They will be bound by that agreement to maintain the pond." RR at 820a. It was not clear from the minutes whether the referenced agreement was to be between the Wards and the Township or between the Wards and the Aubreys. However, the minutes stated that the Aubreys, as Developer, were also required to sign the agreement. Notably, there was no signature space for the Aubreys on the Unexecuted Ward-Township Agreement, which indicated it was not the anticipated agreement mentioned in the meeting minutes. *See id.* at 809a.

The Township Commissioners' meeting minutes of May 16, 1988 contained a notation that "[a] major detention pond is to be located on the Ward property. Easements, rights-of-way and agreements with [the] Ward[s] have been executed." RR at 816a. Again, nothing in the minutes indicated that any of the described agreements were between the Township and the Wards. In fact, the minutes did not even suggest that the unspecified "agreements" related to maintenance or repairs of any pipes leading to the retention pond.

Moreover, the Township, which was the party that would have benefitted from the Unexecuted Ward-Township Agreement, specifically averred that it had never entered into that agreement. RR at 62a-63a. The Wards concurred. *Id.* at 186a. As both parties named in the purported contract agreed it was never finalized, and in light of the vague nature of the meeting minutes produced as the Aubreys' only evidence of the Township's supposed acceptance of the agreement, we cannot say that the trial court erred in determining that the Aubreys failed to

13

adduce sufficient evidence to raise a genuine issue of material fact concerning the enforceability of the Unexecuted Ward-Township Agreement.

In any event, as discussed in subsection 1 above, we agree with the trial court that the existence or nonexistence of an enforceable agreement between the Township and the Wards has no bearing on the Aubreys' obligations under the Storm Water Management Agreement. For all of these reasons, the trial court did not err in determining that the Unexecuted Ward-Township Agreement did not affect the Aubreys' liability under the Storm Water Management Agreement.

### 3. Cause of the Pipe's Deterioration
### a. The Summary Judgment Ruling

The Aubreys contend that the trial court improperly entered summary judgment on the issue of causation, finding that there was no evidence that the Wards or the Millers contributed to the pipe's deterioration. We disagree.

The argument section of the Aubreys' brief includes a single paragraph on this issue. That paragraph consists of a bare averment that the Wards caused damage to the pipe and a bare averment that the trial court erred by granting summary judgment on that issue. *See* Aubreys' Br. at 27. This is insufficient to allow this Court to conduct a meaningful review of the issue on appeal. *See* Pa.R.A.P. 2119(a) (requiring that the argument on each issue include "such discussion and citation of authorities as are deemed pertinent"); Pa.R.A.P. 2119(d) (requiring that "[w]hen the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found"). Accordingly, the argument is waived. *See Commonwealth v. Bishop*, 217 A.3d 833, 841 (Pa. 2019)

14

(quoting *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (holding that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived") (additional citation omitted)).

Even had the Aubreys not waived the argument, we would discern no error in the trial court's entry of summary judgment in favor of the Wards and the Millers. In opposing a summary judgment motion, the nonmoving party may not rest solely on the pleadings, but rather, must identify "one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion . . . ." Pa.R.Civ.P. 1035.3(a)(1). Here, the trial court explained its reasoning in granting summary judgment as follows:

> George Aubrey testified [in his deposition] that the re-excavation occurred only at the retention pond and not near the roadway. [RR at 844a]. Based on the evidence of record, the [trial c]ourt concluded it was not possible for the damage to have been caused by [the] Ward[s'] heavy equipment because the pipe at issue was not in the area where the excavation was performed. *See* [RR at 680a (site plan drawing of development and retention pond)]. Further, the Aubrey[s'] allegation that the Ward[s'] excavation work could have affected pipe in another area is unsupported. There was no evidence or expert testimony produced to indicate that the culvert pipe's deterioration is related in any manner to the re-excavation work of the storm water pond. For these reasons, the Court determined there was no genuine issue of fact in regard to this issue.

RR at 945a-46a. Our review of the record reveals no error in the trial court's reasoning.

15

As between the Township and the Aubreys, the Storm Water Management Agreement clearly imposed responsibility on the Aubreys to maintain the pipe. As between the Aubreys and the Wards and Millers, the Second Aubrey-Ward Agreement provided that the Aubreys must maintain the pipes, except for damage caused by the Wards or their successors in title, for a period of 30 years from April 1, 1988. The Township notified the Aubreys of the pipe's deterioration and demanded repair or replacement in August 2017, within the 30-year period covered by the Second Aubrey-Ward Agreement. RR at 17a-18a; *see also id.* at 595a. As there was no genuine issue of material fact concerning the lack of fault on the parts of the Wards and the Millers regarding the deterioration of the pipe or the date the Aubreys were notified of the pipe's deterioration, it necessarily follows that the Aubreys are liable for the cost of replacing the pipe.

### b. Post-Trial Finding of Fact

The Aubreys further assert that the trial court erred by ruling on the causation issue after trial because it had already decided that issue in granting summary judgment. This issue likewise is not supported by sufficient analysis to allow meaningful review on appeal, and it is therefore waived. *See Bishop*, 217 A.3d at 841 (quoting *Wirth*, 95 A.3d at 837). Moreover, because we have already determined that the trial court did not err by granting summary judgment on this issue, any alleged error by the trial court in allowing the issue to be addressed again at trial was harmless.

16

## B. Notice of Replacement Cost as a Trial Issue

The Aubreys assert that the trial court erred by allowing the Township's expert witness to testify concerning the cost of replacing the pipe. The Aubreys insist they had no notice that replacement cost would be an issue at trial because the trial court's scheduling order stated only that a non-jury trial would "determine whether the condition of the pipe at issue necessitates repair or replacement." RR at 956a. This argument lacks merit.

The trial court explained in its post-trial findings that it added that language to its scheduling order in response to an objection by the Aubreys that the trial should not be limited solely to the amount of damages, but should also include the question of whether the Wards or the Millers had damaged the pipe. RR at 1093a. The clear implication of the trial court's observation is that the Aubreys must therefore have known that damages would be an issue at trial.

Moreover, in its opinion denying the Aubreys' post-trial motion, the trial court explained that the Township's damage demand related to its breach of contract claim, the only claim remaining for trial after the trial court granted partial summary judgment. RR at 1185a. "Additionally, the price quotes for replacing the pipe were included in the expert reports accompanying the Pre-Trial Statements, and [the Aubreys] failed to file a motion *in limine* challenging the price quotes prior to trial." *Id.* (italics added). Further, the trial court observed that it had denied the Township's motion *in limine* to preclude the testimony of the Aubreys' expert witness, whose identity and proposed testimony they disclosed "only days before trial[,[5] such that the Aubreys] had the opportunity to question the [Township's]

_____

[5] In its motion *in limine*, the Township averred that, although discovery had been closed for more than a year, the Aubreys did not provide notice of their intent to call an expert witness

17

expert *and their own* regarding the price quotes for the replacement of the pipe." *Id.* (emphasis added).

Accordingly, we conclude that the trial court did not err by allowing evidence of damages at trial.

### C. The Awards of Attorney and Engineering Fees

As explained above, the Storm Water Management Agreement required the Aubreys to "pay all costs reasonably incurred by [the T]ownship for engineering and legal fees for the review of the plan, inspection of the plan, approval of the plan and improvements . . . ." RR at 15a & 1110a. The trial court relied solely on this provision in awarding engineering fees and relied on it in part in awarding attorney fees.

The Aubreys contend that this provision does not apply to the Township's attorney fee claim. We agree. The plain language of the Storm Water Management Agreement made its reimbursement requirement applicable to legal and engineering expenses only insofar as the Township incurred those expenses regarding the plan approval process.[6] That process ended more than 30 years ago. Therefore, we conclude that the trial court erred by awarding engineering fees, and we reverse the trial court's award of engineering fees to the Township.

---

until just before the close of business on the Wednesday before Thanksgiving, with the trial due to start the following Monday. RR at 1066a-67a.

[6] We note that the Indemnification Agreement separately requires the Aubreys to "save, indemnify, defend and hold harmless the Township against all liability, claims, judgments, actions, causes of actions, suits or demands for damages attributable to or arising in whole or part" from the storm water management system's water retention devices. RR at 10a. Neither the Township nor the trial court addressed the attorney and engineering fee claims in relation to this provision, and we do not consider it here.

The trial court similarly erred to the extent that it based its award of attorney fees on obligations arising from the Storm Water Management Agreement. However, that conclusion does not end our analysis regarding the trial court's award of attorney fees. The trial court also found that the Aubreys' conduct throughout the litigation process was "exceedingly dilatory, obdurate, and vexatious" based on their "repeated pattern of filing motions in which they allege[d] arguments, only to later withdraw or have no factual support for them, [which] was intended to frustrate the legal process and intended to annoy the Township." RR at 1111a.

Section 2503(7) of the Judicial Code[7] provides that "[t]he following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . . [a]ny participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S. § 2503 (7). In addition, Rule 2744 of the Rules of Appellate Procedure provides, in relevant part:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including [] a reasonable counsel fee . . . if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate, or vexatious.

Pa.R.A.P. 2744; *see also Pa. Tpk. Comm'n v. Elec. Transaction Consultants Corp.*, 230 A.3d 548, 562 (Pa. Cmwlth. 2020) (quoting Pa.R.A.P. 2744). Conduct is "dilatory" if it is "[d]esigned or tending to cause delay." *Dilatory*, *Black's Law Dictionary* (11th ed. 2019). Conduct is "obdurate" if it is "stubbornly resistant in wrongdoing." *Obdurate*, *Webster's Third New Int'l Dictionary* 1555 (Gove, ed.

---

[7] 42 Pa.C.S. §§ 101-9913.

19

1986). Conduct is "vexatious" if it is "without reasonable or probable cause or excuse[,] harassing[, or] annoying." *Vexatious*, *Black's Law Dictionary* (11th ed. 2019). *See Transaction Consultants*, 230 A.3d at 562 nn.11-13 (quoting dictionary definitions of "dilatory," "obdurate," and "vexatious").

An award of attorney fees will not be disturbed on appeal unless the trial court "palpably abused its discretion" by awarding fees. *Thurnberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996). Here, the trial court specifically found that the Aubreys' conduct was intended "to frustrate the legal process and . . . annoy the Township." RR at 1111a. Moreover, we conclude that the Aubreys' pattern of filing and then withdrawing meritless motions, along with the lack of any factual or legal support for several other positions they asserted, further supported the trial court's decision to award attorney fees to the Township. Thus, we cannot say that the trial court palpably abused its discretion in concluding that the Aubreys' conduct justified an award of attorney fees against them.

Nonetheless, the trial court erred in its determination of the amount of its attorney fee award. Because it based the amount of its attorney fee award on the terms of the Storm Water Management Agreement, the trial court did not reach the question of how much the Township's attorney fees were increased as a result of the Aubreys' dilatory, obdurate, and vexatious conduct in the course of the litigation. Because that conduct, not a contractual obligation, provided the only support for an attorney fee award, the trial court erred by failing to calculate the fee award on that basis. Accordingly, we will vacate the trial court's attorney fee award and remand this matter to the trial court for a new determination of the amount of that award in accordance with this opinion.

20

## IV. Conclusion

For the foregoing reasons, we conclude that the trial court did not err in its grant of partial summary judgment, its subsequent verdict in favor of the Township and against the Aubreys regarding their responsibility to replace the pipe at issue, its dismissal of the Wards and the Millers from the action, or its finding that the Aubreys' conduct during the litigation was dilatory, obdurate, and vexatious. However, we conclude that the trial court erred as a matter of law in awarding engineering fees to the Township, as well as in awarding the attorney fee amount requested by the Township without determining what portion of the requested fee was attributable to the Aubreys' dilatory, obdurate, and vexatious conduct and whether that fee amount was reasonable. Accordingly, we reverse the trial court's award of engineering fees. We vacate the attorney fee award and remand to the trial court for a new determination of the appropriate fee amount. We affirm the trial court's orders in all other respects.

_____
CHRISTINE FIZZANO CANNON, Judge

21

Butler Township               :
                                              :

        v.                          :
                                              :

George G. Aubrey and John M. Aubrey :

        v.                          :

Robert C. Ward, Deborah A. Ward,   :
Jeffrey P. Miller and Megan M. Groh  :
Miller                                  :
                                            :

Appeal of: George G. Aubrey and   :   No. 405 C.D. 2022
John M. Aubrey                    :

## O R D E R

AND NOW, this 21st day of June, 2023, the judgment of the Court of Common Pleas of Butler County (trial court) is REVERSED as to the award of engineering fees of $4,500.00 to Butler Township (Township). The trial court's judgment is VACATED as to the award of attorney fees of $31,492.50 to Butler Township, and this matter is REMANDED to the trial court for a determination of the attorney fee award amount that is fair and reasonable to compensate the Township for its attorney fees arising from delays and unnecessary legal work caused by the conduct of George G. Aubrey and John M. Aubrey that the trial court found was dilatory, obdurate, and vexatious. The trial court's judgment is AFFIRMED in all other respects.

Jurisdiction relinquished.

 

                                              _____
                                              CHRISTINE FIZZANO CANNON, Judge